**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BALSHE LLC, THE SIMON LAW FIRM, and THE MEYER-CHATFIELD CORPORATION,<br><br>    Plaintiffs,<br><br>        v.<br><br>ALAN J. ROSS and SAVE ASSOCIATES,<br>        Defendants. | No. 12 CV 966<br>Judge James B. Zagel |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I. INTRODUCTION**

This dispute arises out of an alleged violation of a Settlement Agreement between Plaintiffs Balshe LLC, Simon Law Firm, and Meyer-Chatfield Corporation and Defendants Alan J. Ross and SAVE Associates. Plaintiffs allege that Defendants breached the terms of a Settlement Agreement, executed on June 26, 2008, by refusing to deliver the '390 Patent to Plaintiffs. Currently before the Court is (1) Plaintiffs' motion for partial summary judgment against Defendants on a breach of contract claim; (2) Defendants' motion for entry of summary judgment in Defendants' favor; and (3) Defendants' motion to deny Plaintiffs' Motion for partial summary judgment and transfer venue pursuant to 28 U.S.C. § 1406(a). For the following reasons, I deny Defendants' motion to deny Plaintiffs' motion for partial summary judgment and transfer venue in its entirety, and I grant in part and deny in part Plaintiffs' motion for partial summary judgment.

## II. PRELIMINARY MATTERS

Defendants seek to move the court to (1) dismiss this case for lack of subject matter jurisdiction; (2) transfer venue pursuant to 28 U.S.C. 1406(a); and (3) deny Plaintiffs' motion for partial summary judgment for Plaintiffs' lack of compliance with Local Rule 56.

### A. Subject Matter Jurisdiction

There is no dispute that there exists complete diversity among the parties and that the amount in controversy exceeds the value required under 28 U.S.C. § 1332. However, Defendants contend that Plaintiffs no longer have standing because they transferred 100% of their equity interests to Institutional Longevity Assets ("ILA") and MRB Pooled Benefits LLC ("MRB") without retaining the right to enforce the Settlement Agreement. In determining that the court has proper subject matter jurisdiction over this case under 28 U.S.C. § 1332, I reaffirm my April 3, 2013 order. As signatories to the Settlement Agreement, Plaintiffs are the real parties in interest to this action. Defendants have not established that Plaintiffs have transferred their rights to enforce the Settlement Agreement, and any equity interest ILA and MRB may have in Institutional Pooled Benefits LLC ("IPB") does not, at this stage, give those parties such rights.

### B. Improper Venue

Defendants move to assert that venue is improper in this court and request that this case either be (1) dismissed or (2) transferred to the U.S. District Court of Massachusetts pursuant to 28 U.S.C. § 1406(a). Defendants argue that 28 U.S.C. § 1406(a) requires a district court to dismiss or, if in the interests of justice, transfer a case to any district or division in which it could have been brought. Defendants, however, fail to establish a prerequisite to such a dismissal or

transfer—that this case is "laying venue in the wrong division or district." 28 U.S.C. § 1406(a).

They cannot; this case is properly before this court. 28 U.S.C. § 1391.

This case concerns the enforcement of a settlement agreement approved by this Court.

Paragraph 20 of the Settlement Agreement states, in relevant part, "The parties agree that the

Northern District [of Illinois] shall retain jurisdiction to enforce or settle any disputes arising out

of or relating to this Agreement and agree that they will not dispute jurisdiction in the Northern

District." Plaintiffs filed suit alleging that Defendants breached the Settlement Agreement

pursuant to *Balshe LLC v. Ross*. 441 Fed.App'x. 395 (2011) ("any claim relating to

nonperformance of the settlement agreement must be brought as a breach-of-contract action").

As such, a substantial part of the events or omissions giving rise to the claim occurred in this

district. 28 U.S.C. § 1391(a)(2), (b)(2).

I affirm my prior order of July 16, 2013, rejecting Defendants' request to transfer this

matter to a different venue. [Doc. 59]. Defendants have not established that this Court is an

improper venue or that the "transferee forum is clearly more convenient" than the transferor

forum. 28 U.S.C. § 1404(a); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286,

1293 (7th Cir.1989).

## C. Failure to Comply with Rules

Defendants also move to deny Plaintiffs' motion for partial summary judgment on the

grounds that Plaintiffs' failure to include a statement of material facts with its motion for partial

summary judgment is in violation of Federal Rule of Civil Procedure No. 56 and Local Rule 56.

Generally, district courts have broad discretion to enforce and require strict compliance with

their local rules and will only be reviewed for abuse of discretion. *See Elustra v. Mineo*, 595

F.3d 699, 710 (7th Cir.2010) ("We defer to the district court's understanding of its own rules.");
*see also Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1108 (7th Cir.2004).

Defendants contend that violation of Local Rule 56 constitutes grounds for denial of
Plaintiffs' motion.  While Plaintiffs failed to include a statement of material facts with its motion
on July 11, 2013, they filed the relevant statement shortly thereafter on July 21, 2013.  Due to
Plaintiffs' untimely filing, Defendants were given additional time to respond to Plaintiffs'
motion.  Plaintiffs' delay in filing a material statement of facts was not prejudicial to Defendants
and does not require a denial of Plaintiffs' motion for partial summary judgment.  Notably,
Defendants have pointed to no case law that supports their contention.  This Court properly used
its discretion to allow Plaintiffs to submit its statement of material facts.

As I previously held in my February 16, 2013 Order to deny a motion to stay
proceedings, "the substantive issues raised by the motion for partial summary judgment will have
to be decided in some court, and there is no good reason to delay substantive proceedings so that,
if jurisdiction is found to exist, the substantive issues can be promptly addressed by this or
another court."

I now consider the motion for summary judgment before the Court.

### III. BACKGROUND

The action underlying the contested Settlement Agreement, dated June 26, 2008
("Settlement Agreement") involved a dispute over the purchase of interest in the '390 Patent, a
patent describing a system of pooling life insurance policies into a trust in order to create a
predictable income stream for the trust owners (the "Patent").  In 1997, Ross filed an application
for the Patent with the United States Patent and Trademark Office ("USPTO").  Ross assigned a
one-half interest in the Patent to an affiliate of the AXA Group; this interest was then sold and

transferred to Plaintiffs.  Thereafter, Plaintiffs allege that Balshe and Defendants reached an agreement regarding the purchase of Ross's remaining interest in the Patent.

In 2008, Balshe and the Simon Law Firm sued Ross, who does business under the name SAVE Associates, in an Illinois court claiming that Ross had violated a contractual duty to assign Balshe his remaining interest in a patent and attempted to sell the Patent to a third party. Ross removed the action to a federal court based on diversity of citizenship.  28 U.S.C. § 1332. A settlement was reached on June 26, 2008 by Balshe and the Simon Law Firm (collectively referred to as "Balshe" in the Settlement Agreement), Ross, SAVE Associates, and the Meyer-Chatfield Corporation ("MC").  Parties stipulated to dismiss the matter, Case No. 08-cv-3256, with prejudice and to the continuing jurisdiction of the district court to enforce the Settlement Agreement.

As part of the Settlement Agreement, the parties agreed to form a new entity "Newco" for the purpose of commercially exploiting the Patent.  Newco is now known as IPB.  The Settlement Agreement established the rights and obligations of the parties regarding the ongoing ownership, management, and administration of IPB.  The Settlement Agreement stated that the form and jurisdiction in which IPB would be organized/created would be mutually agreed upon by Balshe and MC, and that the ownership and management of IPB would be in accordance with the Settlement Agreement.  Ross and SAVE agreed to execute all necessary documents to assign to IPB right, title, and interest held in the Patent.  The Settlement Agreement also required that IPB use its best efforts to acquire all right, title, and interest in the Patent.

By mid-September 2009, Balshe and MC agreed to and entered into an operating agreement for IPB (the "IPB Operating Agreement").  Defendants contended that the IPB Operating Agreement contained terms to which it did not agree and did not execute the IPB

Operating Agreement. Defendants refused to transfer their interest in the Patent to IPB, alleging that certain provisions contained in the IPB Operating Agreement were inconsistent with and contrary to the terms and conditions set forth in the Settlement Agreement. Defendants contested multiple provisions of the IPB Operating Agreement, in particular, a provision 6(a) that would have prohibited Defendants from attempting to dissuade banks from selling a particular type of policy to Plaintiffs.

Defendants' refusal to transfer its interest in the Patent led the parties to file cross-motions to compel compliance with the Settlement Agreement. The case was filed nearly two years after the dismissal of the original lawsuit and under the same docket number. This Court granted partial relief to Defendant Ross, ordering the Plaintiffs to strike from the Operating Agreement the provision barring Defendant Ross's right to dissuade. This Court ordered Defendant to transfer his remaining interest in the Patent to IPB in compliance with the Settlement Agreement upon removal of the language regarding the right to dissuade.

On October 1, 2010, Plaintiffs filed with the Court an Operating Agreement with provision 6(a) stricken and signed by MRB Pooled Benefits and Institutional Longevity Assets LLC. Defendants filed a motion to reconsider this Court's prior decision. Upon reconsideration, the Court found that Defendants' signature on the IPB Operating Agreement, "though necessary, [wa]s merely a formality." Defendants appealed to the 7th Circuit.

On December 8, 2011, the 7th Circuit vacated the prior judgment for lack of subject-matter jurisdiction, stating that jurisdiction cannot be retained by stipulation. The 7th Circuit remanded the matter back to the district court for further proceedings in which subject-matter jurisdiction could be established. On December 19, 2011, upon the vacating of the September 2,

2010 district court order, Defendants recorded ownership of the registered '390 Patent with the USPTO.

The present action was brought by Plaintiffs Balshe, Simon Law Firm, and MC against Defendants Ross and SAVE Associates for breach of the Settlement Agreement on February 10, 2012.  On April 3, 2013, the court found that the parties had established subject matter jurisdiction; on July 16, 2013, the court denied Defendants' motion to dismiss for improper venue.

On July 11, 2013, Plaintiffs filed an incomplete motion for partial summary judgment seeking a finding in its favor that (1) Defendants have breached the Settlement Agreement; (2) Defendants are liable to Plaintiffs for all damages resulting from its breach; (3) IPB owns all right, title and interest in the Patent; and (4) Defendants may not maintain any voting right or managerial control with respect to any business formed by Plaintiffs to exploit the Patent.

On July 19, 2013, Defendant moved to deny Plaintiffs' motion for partial summary judgment for (1) failure to comply with Fed. R. Civ. P. 56 and (2) to transfer venue pursuant to 28 U.S.C. § 1406.  Shortly thereafter, on July 21, 2013, Plaintiffs submitted a statement of uncontested facts with its motion for summary judgment to Fed. R. Civ. P. 56(e)(1).  On September 6, 2013, Defendants filed a motion to oppose Plaintiffs' motion for partial summary judgment and moved for summary judgment in favor of Defendants.

## IV. DISCUSSION

### A.    Legal Standards

#### 1.    Standard of Review for Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir.2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir.2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d. 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003)(citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002).

### 2. Breach of Contract

Under Illinois law, to prevail on a breach of contract claim, Plaintiffs must establish (1) the existence of a valid and enforceable contract; (2) performance of the contract by Plaintiffs; (3) the breach of the contract by Defendants; and (4) a resulting injury or damages to Plaintiffs. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625 (7th Cir.

8

2007)(citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 286 Ill.Dec. 734, 814 N.E.2d 960, 967 (2004). Only a duty imposed by the terms of the contract can give rise to a breach. *Id*. While Plaintiffs need not specify the amount of damages, Plaintiffs "bear[] the burden of proving that [they] sustained damages." *Olliver v. Alden*, 262 Ill.App.3d 190, 199 Ill.Dec. 579, 634 N.E.2d 418, 422 (1994).

It is undisputed that the Settlement Agreement is a valid contract between Plaintiffs and Defendants. Therefore, I turn to the key consideration: (1) whether Plaintiffs' execution of the IPB Operating Agreement constitutes performance of the Settlement Agreement. Only if performance was completed by Plaintiffs is a duty to execute the IPB Operating Agreement and transfer their rights in the Patent imposed on Defendants.

**B.     Application**

**1.     Breach of the Settlement Agreement**

Plaintiffs claim that they have completed performance of their duties by forming IPB in conformance with the Settlement Agreement and are entitled to have all rights, title, and interests in the Patent transferred to IPB. Defendants contend that they are not required to transfer their remaining property interest in the Patent until the IPB Operating Agreement conforms to the Settlement Agreement. Defendants point to two provisions regarding ownership and management rights to assert that there are inconsistencies between the IPB Operating Agreement and the Settlement Agreement.

First, Defendants claim that 50% of IPB is currently owned by ILA and 50% is currently owned by MRB—even as they contest the validity of MRB's ownership—in contradiction to the Settlement Agreement's provision of only 45% voting equity to both Balshe and MC and 10% non-voting equity to Defendants. Balshe and MC transferred their equity interests in IPB to ILA

and MRB, respectively.  The IPB Operating Agreement allows for an allocation of equity in the amount of 45% to ILA, 45% to MRB, and 10% to Ross.  The distribution of equity interests in the IPB Agreement is equivalent to the allocation in the Settlement Agreement with Defendants receiving 10% equity interest under both agreements.  There is nothing in the Settlement Agreement that restricts Balshe and MC from transferring their equity interests.  The ownership rights provided in the IPB Operating Agreement, while not identical, are consistent with the rights provided in the Settlement Agreement.

Second, Defendants claim that the IPB Operating Agreement contains numerous modifications to the Settlement Agreement regarding management rights, but specifies only one—the prohibition to dissuade.  Defendants are correct that this Court found the language in the IPB Operating Agreement restricting Defendants' right to dissuade banks from selling a particular type of policy to Plaintiffs to be inconsistent with the Settlement Agreement.  In response, Plaintiffs removed this language from the IPB Operating Agreement and submitted it to the Court on October 1, 2010, pursuant to this Court's previous order.  Defendants have not identified any other inconsistencies between the agreements.

The IPB Operating Agreement and the Settlement Agreement are in conformance regarding ownership and management rights.  Plaintiffs have completed performance of the Settlement Agreement by forming the IPB and IPB Operating Agreement in accordance with the Settlement Agreement.

Plaintiffs contend that Defendants' continued refusal to transfer his remaining interest in the '390 Patent is a breach of the Settlement Agreement.  Paragraph 2 of the Settlement Agreement expressly requires that Defendants "execute all necessary documents to assign…all right, title, and interest in the Patent held by Ross and [SA], and any of his/their affiliates,

parents and assigns" to IPB. Instead of transferring his remaining interest to IPB, Defendant recorded his remaining interest in the '390 Patent with the USPTO on December 19, 2011.

Defendants have breached their obligations under the Settlement Agreement to sign the IPB Operating Agreement and transfer their interest in the Patent to IPB. As a consequence, Plaintiffs have suffered a loss from not being able to exploit its patent interests. Plaintiffs have spent over three years and almost $2 million trying to develop business opportunities to exploit the Patent.

### 2. Voting rights and managerial control

Plaintiffs contend that Paragraphs 4, 5, and 8 of the Settlement Agreement exclude Defendants from maintaining any managerial or voting authority with respect to IPB, as specifically outlined in the Settlement Agreement. Under the Settlement Agreement, Defendants are granted a 10% non-voting equity interest under Paragraph 4 of the Settlement Agreement. Similarly, the Settlement Agreement expressly reserves exclusive managerial control of different policies, such as BOLI, GOLI, and COLI, to Plaintiffs.

Whether the Settlement Agreement creates an absolute restriction on Defendants' right to acquire or maintain voting rights or managerial control in the future is an issue that is not yet ripe for consideration. At the present time, however, Defendants do not have a voting right and may not exercise managerial control over named policies of IPB under the Settlement Agreement or IPB Operating Agreement.

## V. CONCLUSION

For the foregoing reasons, partial summary judgment is granted in Plaintiffs' favor.

Defendants are ordered to execute the IPB Operating Agreement and transfer their right, title,

and interest in the '390 Patent to IPB. Plaintiffs are granted leave to seek damages resulting

from Defendants' breach of the Settlement Agreement.

ENTER:

James B. Zagel
United States District Judge

DATE: January 9, 2014

12